UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZABEENA MAHARAJ, RODOLFO SCHULZ,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE HERTZ CORPORATION,<br><br>        Defendant. | Case No.  23-cv-04726-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 62 |

Plaintiffs are managerial employees of Defendant, a car rental company.  Plaintiffs, on behalf of a putative California class, allege Defendant misclassified them as exempt from various wage and hour laws, and thus denied them wages, overtime, meal and rest periods, and accurate wage statements, because Plaintiffs spend most of their time performing duties expected of hourly employees.  (Dkt. No. 42.)[1]  Before the Court is Plaintiffs' motion for class certification.  (Dkt. No. 62.)  Having carefully reviewed the parties' briefing, and having had the benefit of oral argument on March 5, 2026, the Court DENIES Plaintiffs' motion.  Plaintiffs have not met their burden of showing common questions of law or fact predominate over questions affecting individual members.

## BACKGROUND

### A.  Plaintiffs' Allegations and Motion for Class Certification

As relevant here, Defendant employed Plaintiffs as Operations Managers (OMs) and Customer Service Managers (CSMs).  (Dkt. No. 42 ¶¶ 14-16.)  "Defendant utilizes California

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

OMs and CSMs as part of their workforce at its car rental locations.  Their primary duties are waiting on customers at the vehicle rental counter, driving vehicles from one location to another, washing vehicles, handling vehicle returns, and general customer service." (*Id.* ¶ 24.)  "Named Plaintiff Zabeena Maharaj … was employed by Defendant from approximately August 2016 to September 2022 as an Operations Manager in Oakland, California," and Named Plaintiff Rodolfo Schulz worked for Defendant between November 2013 and September 2021 as both a CSM and an OM.  (*Id.* ¶¶ 14-15.)

Defendant's policy "uniformly classif[ied] OMs and CSMs as exempt from federal overtime provisions" and "from the protections of the California Labor Code." (*Id.* ¶¶ 25, 28.)  Despite their classification as managers, "Plaintiffs' … primary duty was not management." (*Id.* ¶ 33.)  Plaintiffs "spent the vast majority of their time performing" "non-exempt duties" such as "general customer service and vehicle preparation." (*Id.* ¶ 34.)  And so, Defendant misclassified Plaintiffs as exempt when Plaintiffs were effectively hourly employees.  As such, Plaintiffs bring nine causes of action under California's Labor Code, unfair competition law, and Private Attorneys' General Act.  (*Id.* ¶¶ 38-130.)

Plaintiffs move to certify the following class under Federal Rule of Civil Procedure 23(b)(3): "All persons employed by Hertz in California as exempt-classified Operations Managers ('OMs') at any time from June 30, 2021, through the date of class certification." (Dkt. No. 62 at 2.)  Plaintiffs also move to appoint Plaintiffs Maharaj and Schulz as class representatives and to designate Plaintiffs' counsel as class counsel.  (*Id.* at 8.)

**B.  Plaintiffs' Evidence**

Plaintiffs attach the deposition of Defendant's person most knowledgeable ("PMK"), Greg Boardman, and Defendant's discovery responses.  (Dkt. No. 62-6.)  Mr. Boardman is the director of human resources for southern California.  (*Id.* at 11:8-11.)  As relevant here, Defendant's discovery responses demonstrate "[s]ince June 30, 2021, Hertz has employed 160 Operations Managers in California." (*Id.* at 76.)

Mr. Boardman testified as to the standardized nature of an OM's duties.  He explained "defining and determining the job description for operations managers in California" is "a

2

corporate decision." (*Id.* at 34:12-18.)  An OM's role is to "support[] all of [Defendant's] front-end … hourly employees… essentially making sure that flow of business is happening, conducting audits throughout the day, assisting with any customer-related issues that maybe another employee is unable to handle[.]" (*Id.* at 20:24-21:8.)  Additionally, "the primary responsibilities and the primary duties of operations managers remain constant across locations, but the emphasis might change from one location to the other and the intensity might change" based on the volume of the airport and staffing levels.  (*Id.* at 28:20-29:18.)  But across the board, due to the company's collective bargaining agreement, OMs are "not permitted to conduct" "bargain work"; for instance, an operations manager can "assist" in conducting rentals, "but they can't rent" cars directly to customers.  (*Id.* at 23:10-24:16.)

"[A]ll operations managers in California in Hertz locations are classified as exempt[.]" (*Id.* at 31:20-23.)  Non-exempt positions include front-end and back-end employees like "customer service representatives, vehicle service attendants, instant-return representatives, exit gate representatives, courtesy bus drivers, and transporters." (*Id.* at 32:1-13.)  Mr. Boardman explained the decision to globally classify operations managers as exempt in California was "made at the corporate level," but Mr. Boardman does not know "what factors were taken into account" in that determination.  (*Id.* at 52:2-23.)

The remainder of Plaintiffs' evidence is declarations from putative class members.  Every declarant attests, among other things, each spent over 50% of their time doing work expected to be done by hourly employees.  (Dkt. No. 62-2 ¶ 3; Dkt. No. 62-3 ¶ 6; Dkt. No. 62-4 ¶ 5; Dkt. No. 62-5 ¶ 7.)  Lead Plaintiff Schulz attests he spent 80% of his time doing such work because the location was understaffed and "[a]s a matter of practice, I would receive an email … or a walkie-talkie communication[] that before the managers left home, they would need to wash [a] certain number of cars, usually between 10 and 15 cars, depending on how busy the day was." (Dkt. No. 62-3 ¶¶ 6-8.)  Another putative class member, Mr. Trice, similarly attests "upper management routinely directed" him to perform non-exempt work like washing cars.  (Dkt. No. 62-4 ¶ 6.)

Additionally, both lead plaintiffs explain some tasks required a process by which they would enter a unique employee ID number to identify the employee who performed the task.

United States District Court
Northern District of California

(Dkt. No. 62-3 ¶¶ 7-9; Dkt. No. 62-5 ¶ 9.)  Mr. Schulz attests he entered his ID number into Defendant's system when he washed cars.  (Dkt. No. 62-3 ¶¶ 7-9.)  By contrast, Ms. Maharaj states she "would mostly" rent out cars "using employee ID numbers of front-end employees, which was the common practice," so front-end employees could receive "credits," "extra bonuses," and "commissions."  (Dkt. No. 62-5 ¶ 9.)  But it was also common practice "in [her] location" to leave a "written note with my initials" inside the car in case follow-up was needed, then dispose of the note afterwards if follow-up was not needed.  (*Id.*)

### C.  Defendant's Evidence

Defendant submits the depositions of Plaintiffs' declarants, as well as declarations of Operations Managers and people who supervised or worked with Plaintiffs' declarants.  Broadly speaking, at their depositions, Plaintiffs' declarants testified they performed many of the primary duties of OMs as reflected in job descriptions, but reaffirmed at least 50% of their time was spent performing work expected of non-exempt employees.  (*See generally* Dkt. No. 77-1 at 70-352.)[2] Unlike Plaintiffs' declarants, the current and former Operations Managers who submitted declarations in opposition attest, among other things, they spent at most 20% of their time performing non-exempt work.  (*See, e.g.*, Dunker Dec. ¶ 13; Gravatt Dec. ¶ 7; Espiritu Dec. ¶ 8.)

In broad strokes, the supervisors and coworkers weigh in on Plaintiffs' declarants' testimony.[3]  For instance, Mr. Gravatt states his "belief that if an OM is spending the majority of their time … on hourly tasks, they are not managing effectively, nor are they performing the expected duties of the job."  (Gravatt Dec. ¶ 7.)  Mr. Gravatt, who worked with Lead Plaintiff Schulz, specifically recalls Mr. Schulz spent "[e]xcessive time performing hourly tasks and was not effectively managing when he did this. … I felt that Mr. Schulz was often not competently performing the core managerial functions of the OM position."  (*Id.* ¶ 16.)  Ms. Dela Rosa, a

---

[2] As it appears on ECF, Defendant's evidence is combined into one document.  (Dkt. No. 77-1.) As such, when citing to a declaration in Defendant's evidence, the Court will refer to the declarant's last name.  The Court will cite page numbers of depositions as they appear on ECF.
[3] Plaintiffs characterize the declarations from supervisors and coworkers as "attacks on Plaintiffs' credibility."  (Dkt. No. 78 at 17-18.)  To the extent Defendant's declarants contradict Plaintiffs' testimony, the Court considers these contradictions only for purposes of Rule 23, not for the merits of Plaintiffs' claims.

United States District Court
Northern District of California

general manager who supervised Lead Plaintiff Maharaj and declarant Mr. Trice, estimates OMs "were called upon to cover for hourly workers no more than two hours per shift" during busier months and less than one hour per shift during the slower months.  (Dela Rosa Dec. ¶ 13.)  Ms. Dela Rosa also corroborates that employees scan their badge before performing certain tasks, then attests "I checked Mr. Trice's records, and found that he scanned his badge 119 times between June 30, 2020, and February 24, 2024. This averages out to fewer than four badge scans per month. Based on my training and experience, this indicates that Mr. Trice rarely performed hourly work."  (*Id.* ¶ 17.)

## DISCUSSION

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  "Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)(3) have been satisfied."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (cleaned up).  Under Rule 23(a), a case is appropriate for certification if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). "The predominance inquiry is 'more demanding' than the commonality inquiry" because "the common issues must predominate."  *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025) (quoting *Ahem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  "[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3),"

and that proof must be by a preponderance of the evidence. *Olean*, 31 F.4th at 664.

### A. The Requirements of Rule 23(a) Are Met

#### 1. Numerosity and Adequacy of Representation

Plaintiffs have satisfied their burden of showing "the class is so numerous that joinder of all members is impracticable" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1), (4). Here, numerosity is met because "[s]ince June 30, 2021," the beginning of the class period, "Hertz has employed 160 Operations Managers in California." (Dkt. No. 62-6 at 76.) Additionally, both lead plaintiffs attest they understand the responsibilities of being class representatives and have no conflicts of interest. (Dkt. No. 62-3; Dkt. No. 62-5.) Defendant does not challenge Plaintiffs' showing on these two requirements.

#### 2. Commonality and Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). So, the Court will address both requirements together. As for commonality, "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Typicality, too, is construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (cleaned up). Typicality is not met when the named plaintiff is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiffs have met their burden of showing commonality and typicality. "[A]ll

United States District Court
Northern District of California

operations managers in California in Hertz locations," meaning all proposed class members, "are classified as exempt[.]" (Dkt. No. 62-6 at 31:20-23.)  Plaintiffs therefore raise the same injury as absent class members: they were classified as non-exempt, yet spent at least 50 percent of their time performing non-exempt work, resulting in California Labor Code violations.  (*See* Dkt. No. 42 ¶¶ 25, 28, 33-34; Dkt. No. 62-2 ¶ 3; Dkt. No. 62-3 ¶ 6; Dkt. No. 62-4 ¶ 5; Dkt. No. 62-5 ¶ 7.) And there is common evidence, such as Mr. Boardman's testimony, job descriptions and trainings, delineating what constitutes exempt work (*i.e.*, work expected of Operations Managers) vs. non-exempt work (*i.e.*, work expected of hourly employees).  (*See, e.g.*, Dkt. No. 62-6 at 20:24-34:18.) The named plaintiffs also testified standardized job postings accurately described the job descriptions of Operations Managers.  (*See generally* Dkt. No. 77-1 at 70-352).  So, there are common questions of law and fact and Plaintiffs' claims are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1019–20.

Defendant's arguments to the contrary are unavailing.  Defendant argues: (1) the actual work Plaintiffs claim they performed was "not typical of other operations managers;" (2) Plaintiffs' declarations do not illustrate a typical experience of class members because the evidence is individualized and anecdotal; and (3) a common policy of misclassification cannot satisfy commonality or typicality.  (Dkt. No. 77 at 13–16).  The first two arguments misstate Plaintiffs' burden.  Plaintiffs need not prove their "experience[s]" were typical of class members; their burden is to show common questions and their "claims and defenses" are typical, Fed. R. Civ. P. 23(a)(3), that is, "reasonably co-extensive" of class members.  *Hanlon*, 150 F.3d at 1020. Again, both prongs are "construed permissively." *Id.* at 1019–20.

Moreover, as for all three arguments, Defendant's authority is not grounded in Rule 23(a). Defendant cites four cases for its first two arguments, but all four cases are predicated on Rule 23(b)(3), its analogue under California law, or the Fair Labor Standards Act.[4]  Similarly,

---

[4] The first case, *Casey v. Home Depot*, 2016 WL 7479347 (C.D. Cal. Sept. 15, 2016), is based on the Rule 23(b)(3) predominance prong, not the commonality requirement in Rule 23(a)(2). *Id.* at *23.  "The predominance inquiry is 'more demanding' than the commonality inquiry" because "the common issues must predominate." *DZ Reserve*, 96 F.4th at 1233 (quoting *Windsor*, 521 U.S. at 623).  Another case, *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011), is about collective actions brought under the Fair Labor Standards Act, which

United States District Court
Northern District of California

Defendant cites three cases for its argument "a common policy or practice of treating employees as exempt does not necessarily establish that [employees] were misclassified, because the policy may have accurately classified some employees and misclassified others." (Dkt. No. 77 at 18) (cleaned up) (brackets in opposition). But, again, all three holdings are based on Rule 23(b)(3)'s predominance prong, not commonality or typicality. *See Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 948–49 (9th Cir. 2011); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 n.3 (9th Cir. 2009) ("There is no dispute concerning the Rule 23(a) factors."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). So, Defendant has not defeated Plaintiffs' showing of commonality and typicality.

### B. Plaintiffs Have Not Shown Common Issues Predominate[5]

Rule 23(b)(3) requires "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Predominance "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (cleaned up). The predominance analysis has three steps:

> First, we identify which questions are central to the plaintiffs' claim. Second, we determine which of these questions are common to the class and which present individualized issues. Third, we analyze whether the common questions predominate over the individual questions.

*DZ Reserve*, 96 F.4th at 1233.

Applying step one here, this is a misclassification case brought by managerial employees in California, so the central question is whether Operations Managers were misclassified as

Rule 23 does not govern. *Id.* at 1131. Defendant's other two cases–*Kizer v. Tristar Risk Management*, 13 Cal. App. 5th 830 (2017) and *Walsh v. Ikon Office Solutions, Inc.*, 148 Cal. App. 4th 1440 (2007)–address class actions under California law, which essentially merges the commonality and predominance prongs of Rule 23. *See id.* at 1450. Both California cases emphasize the plaintiffs' failure to demonstrate "common proof" of class-wide issues, which, if analyzed under Rule 23, would be dispositive under the predominance inquiry, but not necessarily dispositive under commonality. *Id.* at 1455–56, *Kizer*, 13 Cal. App. 5th at 844.

[5] The failure to show predominance is dispositive for Plaintiffs' motion, so the Court will not address the parties' other arguments about manageability and trial plans.

*United States District Court*
*Northern District of California*

exempt under the "executive exemption" in Title 8, Section 11090(1)(A)(1) of the California Code of Regulations.  (Dkt. No. 62 at 13-14; Dkt. No. 77 at 9-10.)[6]  The exemption applies to "any employee" in the transportation industry who meets six requirements:

> (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

> (b) Who customarily and regularly directs the work of two or more other employees therein; and

> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

> (d) Who customarily and regularly exercises discretion and independent judgment; and

> (e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement

> (f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section

---

[6] Plaintiffs' motion does not identify the exemption under which class members have been misclassified. (*See generally* Dkt. Nos. 62.)  The operative complaint repeatedly cites Industrial Welfare Commission Order No. 5-2001, which governs the "public housekeeping industry." (*See generally* Dkt. No. 42); Cal. Code Regs., Tit. 8 § 11050(1)(A)(1).  That order states it does not apply to "persons employed in administrative, executive, or professional capacities" under three exemptions: an executive exemption, an administrative exemption, and a professional exemption. Cal. Code Regs., Tit. 8 § 11050(1)(B)(1)-(3).  By contrast, Defendant's opposition identifies Order No. 9-2001, which governs the transportation industry and has the same three exemptions, verbatim. *Compare id.* § 11050(1)(B)(1)-(3), *with id.* § 11090(1)(A)(1)-(3).  Defendant identifies the executive exemption as applicable, and  Plaintiffs' Reply did not disagree. (*See generally* Dkt. No. 78.)  So, for purposes of this motion, the Court assumes Defendant is correct the executive exemption in Order No. 9-2001 forms the basis of Plaintiffs' misclassification theory.  If anything, Plaintiffs are in the transportation industry, and of the three exemptions, only the executive exemption could apply to Plaintiffs.

United States District Court
Northern District of California

515(c) as 40 hours per week.

Cal. Code Regs., Tit. 8 § 11090(1)(A)(1).

Of these six requirements, the only one central to Plaintiffs' misclassification claim is requirement (e), which involves the duties Plaintiffs are "primarily engaged in." *Id.* § 11090(1)(A)(1)(e). Stated differently, Plaintiffs' theory as to why class members were misclassified does not rely on any other requirement of this exemption. Take, for example, the named Plaintiff Zabeena Maharaj, whose declaration appears to only challenge requirement (e). (Dkt No. 62-5 ¶ 7 ("I would estimate that I spent over 50% of [my] time on nonexempt activities during any pay period[.]")) In her declaration and at her deposition, she did not challenge the other requirements of the exemption, namely whether "her duties and responsibilities involve … management," she "customarily and regularly directs the work" of other employees, she "has the authority to hire or fire other employees," she "customarily and regularly exercises discretion and independent judgment," or her salary is twice the minimum wage. Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(a)-(d), (f); (*see generally* Dkt. No. 62-5; Dkt. No. 77-1.) The same is true of every class member for whom Plaintiffs submitted a declaration: their testimony only raises an issue as to the duties in which they are primarily engaged. (*See generally* Dkt. No. 62-2 (Mr. Valencia's declaration attests 50% of his time is spent on non-exempt duties); Dkt. No. 77-1 at 247-297 (at his deposition, Mr. Valencia did not dispute he had managerial duties, directed other employees, or other exemption requirements); Dkt. No. 62-3 (Mr. Schulz's declaration attests approximately 80% of his time spent on non-exempt duties); Dkt. No. 77-1 at 152-246 (at his deposition, Mr. Schulz did not dispute other exemption requirements); Dkt. No. 62-4 (Mr. Trice's declaration attests he spent over 50% of his time on non-exempt duties); Dkt. No. 77-1 at 298-352 (at his deposition, Mr. Trice did not dispute other exemption requirements)).

So, the question central to Plaintiffs' claims are which duties Operations Managers were "primarily engaged in" during the class period. Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(e). Under the exemption's text, the answer to this question hinges on "[t]he work actually performed by the employee during the course of the workweek," and "the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic

10

United States District Court
Northern District of California

requirements of the job." *Id.*

"Under step two, we determine which of those [questions] are 'common'—which means they are 'capable of being established through a common body of evidence, applicable to the whole class.'" *DZ Reserve*, 96 F.4th at 1233 (quoting *Olean*, 31 F.4th at 666). The California Supreme Court offers guidance. In *Duran v. U.S. Bank National Assn.*, 59 Cal. 4th 1, 26–28 (2014), the court addressed a misclassification theory under a similar exemption from overtime laws, the outside salesperson exemption, which applies to an employee who "customarily and regularly work[s] more than half the working time away from the employer's place of business selling … or obtaining orders or contracts." *Id.* at 26–27. The court summarized:

> We have observed that some common questions about the exemption "are likely to prove susceptible of common proof" in a class action. Job requirements and employer expectations of how duties are to be performed may often be established by evidence relating to a group as a whole. But litigation of the outside salesperson exemption has the obvious potential to generate individual issues because the primary considerations are how and where the employee actually spends his or her workday. Of course, the questions of actual performance and employer expectations can be intertwined. For example, evidence that most members of a company's sales force actually spend the majority of their time working in the office might be relevant to show that the employer's expectations regarding outside sales work were unreasonable. Yet, as noted, the question is "first and foremost" how the employee's time is actually spent. Given California's uniquely quantitative approach to this exemption, some proof about how individual employees use their time will often be necessary to accurately determine an employer's overtime liability.

*Id.* at 27. Similarly, here, requirement (e) of the exemption calls for a "uniquely quantitative approach" as to individual employees because, like the exemption in *Duran*, it requires "first and foremost" "[t]he work actually performed by the employee … be examined." Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(e); *Duran*, 59 Cal. 4th at 27. And under the terms of requirement (e), this "uniquely quantitative," question must be answered "together with the employer's realistic expectations and the realistic requirements of the job." *Duran*, 59 Cal. 4th at 27.

So, here, the "work actually performed by the employee" requires at least some proof as to how an individual class member spends their time. Based on Plaintiffs' evidence of work actually performed, which consists of each declarant's estimate of the time they spent performing non-

11

exempt activities, this question cannot be answered exclusively "through a common body of evidence." *Olean*, 31 F.4th at 666. (*See generally* Dkt. Nos. 62-2, 62-3, 62-4, 62-5.)

Additionally, "the employer's realistic expectations and the realistic requirements of the job" is a mixed bag of class-wide and individualized evidence. Some evidence of the employer's expectations and the role's requirements is class-wide. For instance, Defendant's PMK testified "the primary responsibilities and … duties of operations managers remain constant across locations," "operation managers in California at Hertz airport locations all have the same job description," and "defining and determining the job description for operations managers in California" is "a corporate decision." (Dkt. No. 62-6 at 29:12-18, 34:12-18.) Yet other evidence of expectations and requirements, and particularly whether those are "realistic" under the exemption, is individualized to class members or sub-classes; the same PMK also testified the "emphasis" and "intensity" of class members' duties "might change from one location to the other." (*Id.* at 29:12-18.)

Putative class members' testimony, too, raises individualized questions about the employer's expectations and the job's requirements. Mr. Schulz, for example, attests he was instructed to "wash [a] certain number of cars," which is non-exempt work, "[a]s a matter of practice." (Dkt. No. 62-3 ¶ 7.) Similarly, Mr. Trice attests "upper management routinely directed Operations Managers" like him to do non-exempt work. (Dkt. No. 62-4 ¶ 6.) Plaintiffs do not explain what common proof exists of this purported practice. And while Plaintiffs' declarants attest they spent most of their time on non-exempt work, Plaintiffs' supervisors attest that was neither required nor the employer's expectation. (*See, e.g.*, Dkt. No. 77-1 at 46, 53 (supervisors of both lead plaintiffs each attest "Operations Managers were never expected to spend the majority of their time performing the work of hourly workers, and any Operations Manager who did this would simply not be performing the expected duties of the job.")) So, Plaintiffs' particular theory of misclassification relies heavily on individualized evidence, as opposed to class-wide proof.

Having identified individual and class-wide questions, step three of the predominance inquiry asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *DZ Reserve*, 96 F.4th

United States District Court
Northern District of California

United States District Court
Northern District of California

at 1233 (cleaned up). Here, Plaintiffs have not met their burden of showing common issues predominate. Plaintiffs' predominance analysis, which is less than half a page, only mentions "standard job descriptions, uniform training modules, and centralized directives governing workload and staffing." (Dkt. No. 62 at 14-15.) But to prove misclassification, "[f]irst and foremost" Plaintiffs must show "the work actually performed by the employee," Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(e), which is a "uniquely quantitative" question under California law. C*f. Duran*, 59 Cal. 4th at 27. Plaintiffs have not identified common proof of work actually performed; rather, their evidence consists of class members' estimates of their own work. (*See* Dkt. Nos. 62-2, 62-3, 62-4, 62-5.) Defendant's PMK testified the "emphasis" and "intensity" of class members' duties, and therefore the breakdown of work actually performed, "might change from one location to the other." (*Cf.* Dkt. No. 62-6 at 29:12-18, 34:12-18.) And although Plaintiffs emphasize Defendant's decision to classify Operations Managers as exempt was made at the corporate level, that is not sufficient to establish common issues predominate because:

> a blanket exemption policy "'does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (citation omitted). Specifically, the existence of a policy classifying FTS as exempt from overtime-pay requirements does not necessarily establish that FTS were misclassified, because the policy may have accurately classified some employees and misclassified others.

*Marlo*, 639 F.3d at 948; *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609 (N.D. Cal. 2010) (on remand, district court found individualized inquiries were required despite the company's blanket classification). Again, Plaintiffs do not have common proof "as to whether class members are performing similar duties" or "accurately classified" because Plaintiffs rely on declarants' estimates of their own work. *Marlo,* 639 F.3d at 948 (cleaned up). So, common issues do not predominate with respect to work actually performed.

Similarly, while there is some common proof with respect to "the employer's realistic expectations and the realistic requirements of the job," individual issues predominate on this question as well. Plaintiffs' misclassification theory appears to be class members had additional responsibilities which are absent from and contradict the common proof: Plaintiffs assert

13

"Operations Managers were frequently directed by senior management to perform manual labor" and class members' testimony about work actually performed "directly contradict[s]" Defendant's PMK's testimony. (Dkt. No. 62 at 11.) There is no common proof as to where these directions or expectations came from; Plaintiffs' evidence consists of individual declarations, which does not satisfy predominance. *See Casey*, 2016 WL 747347 at *23 (declarations from seven employees is not sufficient common proof regarding whether the class as a whole is misclassified because such evidence is "anecdotal"). Plaintiffs' supervisors and other class members, too, attest to different expectations and breakdowns of the work they performed, which suggests common proof of expectations and responsibilities does not predominate. Finally, California law requires an examination as to whether the expectations and requirements are "realistic," Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(e), yet Plaintiffs' motion does not even say the word "realistic," let alone explain how that examination is susceptible to common proof. So, Plaintiffs have not met their burden of showing common issues predominate.

Plaintiffs' citation to *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 455–65 (2016) in reply is unavailing. There, the Supreme Court permitted the use of representative statistical evidence of how employees spent their time to show predominance. *Id.* at 453–57. Here, Plaintiffs rely on individuals' estimates of their own time, with no evidence showing this was typical or representative of how the class as a whole spent their time. So, *Tyson* is inapposite.

Plaintiffs' reply raises two new arguments regarding predominance. First, Plaintiffs assert the expectation class members perform mostly exempt work is unrealistic due to a policy of "corporate-mandated understaffing." (Dkt. No. 78 at 11.) Second, Plaintiffs contend Defendant "logs every rental transaction by the User ID of the employee who processed it." (*Id.* at 9.) As support for the latter, Plaintiffs cite class members' testimony they used badges and logged IDs before washing and renting cars, and excerpts of a deposition where defense counsel said they could "pull the numbers" to prove a class member "did not do hundreds of rental agreements." (*Id.*) The "numbers" in these company logs, according to Plaintiffs, could provide common proof of work actually performed, yet Defendant "knowingly withheld" this data. (*Id.*)

The Court sustains Defendant's objections and STRIKES these arguments and the

14

supporting declaration of Alfredo Torrijos because Plaintiffs did not make either argument in their opening brief. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (parties may not "submit 'new' evidence in their reply without affording [the opposing party] an opportunity to respond. Such a result would be unfair.")  Plaintiffs' motion did not identify a policy of "corporate-mandated understaffing," let alone common proof of such a policy.[7]  Nor did Plaintiffs identify bulk data as potential common proof, despite submitting multiple declarations that mentioned badges and unique employee IDs.  On the record before the Court, Plaintiffs have not shown Defendant "knowingly withheld" the data for purposes of discovery estoppel because the only effort Plaintiffs made to obtain this data was one question at Mr. Boardman's deposition– "Does Dash maintain a log of when employees have logged into the Dash system?"–to which he responded "I'm not certain."  (Dkt. No. 62-6 at 58:1-3.)  A PMK's testimony he is "not certain" whether information exists, without more, does not establish a party "knowingly withheld" that information.  Plaintiffs' counsel also did not ask a follow-up question to Mr. Boardman, attach the deposition excerpts about "pull[ing] the numbers" to his declaration, or identify a discovery request where Defendant would have been required to produce the bulk data.  (*See id.*; Dkt. No. 78-1.)

### C. Plaintiffs' Requests to Compel and to Deny the Motion Without Prejudice

In reply, Plaintiffs request any denial of class certification be "without prejudice and paired with an order requiring Hertz to produce classwide versions of the tracking data it admits exists." (Dkt. No. 78 at 18.)  Plaintiffs request is DENIED.  Plaintiffs offer no explanation for why they did not seek this discovery prior to moving for class certification.  They had more than enough time to do so given the Court granted three requests to continue Plaintiffs' deadline to file their

_____

[7] Even if the Court were to consider this argument under the predominance inquiry, Plaintiffs again rely on individual declarants' testimony regarding understaffing.  Plaintiffs' declarants also did not attest to a policy of understaffing; they testified they repeatedly received instructions to do non-exempt work.  Mr. Boardman also did not testify about an understaffing policy or anything of the sort.  While Plaintiffs emphasize the PMK testified about the varying "emphasis" of class members' duties by location (Dkt. No. 62-6 at 29:12-18, 34:12-18), that is a far cry from common proof of any "corporate-mandated understaffing."  (Dkt. No. 78 at 11.)

United States District Court
Northern District of California

class certification motion.  (Dkt. Nos. 50, 56, 58.)  And even with those continuances, Plaintiffs missed the deadline.  Over Defendant's objection, the Court nonetheless permitted Plaintiffs to move for class certification after the deadline for doing so.  (Dkt. No. 69.)  Further, Plaintiffs were aware of the data as, explained above, their declarants testify they used badges and logged IDs before washing and renting cars.  (*See, e.g.,* Dkt. No. 62-1 at ¶ 7.)   In these circumstances, the Court declines to reopen discovery for the purposes of class certification.

Moreover, even if Plaintiffs acquired bulk data showing when class members entered their ID information, Plaintiffs have not explained how such data would allow them to meet the predominance requirement.  There is no evidence Defendant recorded how long an employee spent on particular tasks, so even if some tasks were recorded, how long the class member spent performing those tasks would still require individual testimony.  Further, Lead Plaintiff Maharaj attests she "would mostly" rent out cars "using employee ID numbers of front-end employees, which was the common practice."  (Dkt. No. 62-5 ¶ 9.)  She used her own ID number when doing non-exempt work "by [her]self."  (*Id.* ¶ 10.)  So, her testimony shows it was "common practice," or perhaps common practice "in [her] location," for her non-exempt work to "mostly" _not_ be captured in Defendant's bulk data.  (*See id* ¶¶ 9-10.)  And even if the bulk data revealed representative statistical evidence as to the work class members performed, that is only part of the relevant inquiry because the work actually performed must be examined "together with the employer's realistic expectations and the realistic requirements of the job."  Cal. Code Regs., Tit. 8 § 11090(1)(A)(1)(e).  As noted above, Plaintiffs' particular theory of misclassification shows the evidence of expectations and requirements is less susceptible to class-wide proof.  Therefore, the Court, in its discretion, declines to allow Plaintiffs to move yet again for class certification after the deadline for doing so.

## CONCLUSION

The Court DENIES Plaintiffs' motion for class certification as Plaintiffs have not met their burden of showing common issues predominate.  The Court sets a further case management conference for April 9, 2026 at 2:00 p.m. via Zoom video.  An updated joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 62.

**IT IS SO ORDERED.**

Dated: March 6, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge